IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON KOUGL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:04-CV-2518-D |
| VS. | § | |
| | § | |
| XSPEDIUS MANAGEMENT CO. OF | § | |
| DALLAS/FORT WORTH, L.L.C., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging, *inter alia*, claims for breach of contract, fraud, negligent misrepresentation, constructive fraud, and fraud in the inducement, defendants move pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for partial dismissal of plaintiffs' first amended complaint ("complaint"). For the reasons that follow, the court grants the motion in part, denies it in part, and grants plaintiffs leave to replead.

I

This litigation arises out of alleged contractual relationships between plaintiffs Jason Kougl ("Kougl") and Mark Charles Computing Solutions, Inc. ("MCCS") and defendants Xspedius Management Co. Switched Services, LLC d/b/a Xspedius Communications, LLC ("Xspedius Switched Services") and Xspedius Management, LLC ("Xspedius Management").[1] Defendants are

---

[1] Plaintiffs originally sued Xspedius Management Co. of Dallas/Fort Worth, LLC ("Xspedius Dallas"), as well, and it was included among the defendants who filed the instant motion to dismiss. On March 16, 2005, however, the court dismissed plaintiffs' action against Xspedius Dallas on the parties' agreed motion. The motion to dismiss is therefore moot concerning plaintiffs' claims against Xspedius Dallas, and the court need not address the motion to the extent it relates to Xspedius Dallas or issues that arise based on its status as a defendant, including the motion to reconsider. *See* Ds. Mot. Dis. at 10 n.2.

in the business of providing telephone, Internet, and related telecommunications services to small- and medium-sized enterprises throughout the United States. Xspedius Switched Services employed Kougl as a Retail Service Account Executive. It agreed to compensate him for his efforts to sell telecommunications services.[2] The terms of this agreement were set out in the "General Terms and Conditions Compensation Plan" ("Plan"), which outlined a commission-based compensation structure. Kougl and Xspedius Switched Services also entered into a written or oral agreement under the terms set forth in the Plan.

MCCS entered into a Lead Broker Agreement ("Agreement") with Xspedius Management, under the terms of which MCCS referred customers to Xspedius Management in exchange for commissions based on the services sold to these customers. MCCS referred Rick Robinson, a representative of Jackson-Hewitt Tax Service Inc. ("Jackson-Hewitt"), to Xspedius Management. Working from this lead, Kougl negotiated for Xspedius Switched Services and Xspedius Management to supply telecommunications services to Jackson-Hewitt. Xspedius Switched Services and Xspedius Management later entered into one or more service contracts with Jackson-Hewitt.

Neither defendant has paid either Kougl or MCCS compensation in relation to the service contracts with Jackson-Hewitt. Kougl and MCCS bring this suit, alleging that defendants are liable for breach of contract and fraud. Xspedius Switched Services and Xspedius Management move to

---

[2]As noted *infra* at § II(A), in deciding defendants' motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. The court does not rely on conclusional allegations or legal conclusions that are disguised as factual allegations. The court recounts the factual allegations of plaintiffs' complaint under these standards.

dismiss under Rules 12(b)(6) and 9(b).

## II

Defendants move to dismiss Kougl's breach of contract action under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

### A

In deciding the motion, the court construes the complaint in the light most favorable to Kougl, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). The court does not, however, "rely upon conclusional allegations or legal conclusions that are disguised as factual allegations." *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001). "[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Prodedure* § 1357, at 598 (1969)). "[D]ismissal of a claim on the basis of barebones pleadings is a 'precarious disposition with a high mortality rate.'" *Id.* (quoting *Barber v. Motor Vessel "Blue Cat,"* 372 F.2d 626, 627 (5th Cir. 1967)). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (Rule 12(c) decision) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

### B

Under Texas law, the essential elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach

of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See, e.g., Coppock v. Northrop Grumman Corp.*, 2002 WL 1796979, at *17 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001, no pet.)).   The determinative issue is whether Kougl has pleaded sufficient facts to allege the existence of a valid contract.

It is settled under Texas law that "[e]mployee handbooks and manuals do not create contracts when the parties have not expressly agreed that the procedures contained in these materials are binding." *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991) (citing *Hicks v. Baylor Univ. Med. Ctr.*, 789 S.W.2d 299, 302 (Tex. App.1990, writ denied)).   A commission arrangement set out in an employee handbook does not create a contract if it makes commissions completely discretionary to the company and disclaims any contractual relationship. *See, e.g., Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 719-20 (Tex. App. 1992, writ denied). Because the Plan contains specific provisions that disclaim its use as a contract and make all terms modifiable at the discretion of Xspedius Communications, LLC,[3] it did not create a valid contract.

Although Kougl has failed to state a claim for breach of a written contract based on the Plan, the court concludes under the highly deferential standard of Rule 12(b)(6) that he has stated a claim for breach of an oral contract.  Kougl alleges that "Defendants agreed to compensate Plaintiff Kougl for his sales."  Compl. ¶ 3.02.   He also asserts that the terms of the agreement are detailed in the Plan. *Id.*  Kougl then avers in support of his breach of contract claim that he and defendants

_____

[3]Defendants urge in their motion that the court carefully distinguish between Xspedius Communications, LLC, who is not a party to this lawsuit, and Switched Services. *See* Ds. Mot. Dis. at 1 n.1.  To decide the motion to dismiss, the court need not address this distinction in detail.  But because the Plan refers to employees of "Xspedius Communications, LLC," *see, e.g.,* Ds. App. 19, the court notes this fact.

"entered into a written or oral agreement which constitutes a valid and enforceable contract." *Id.* ¶ 4.02.   Under the standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and viewing the allegations of Kougl's complaint in the light most favorable to him for purposes of deciding the motion to dismiss, *see, e.g., Royal Bank of Canada v. FDIC*, 733 F. Supp. 1091, 1094 (N.D. Tex. 1990) (Fitzwater, J.), the court is unable to say that he can prove no set of facts, consistent with the allegations, that would entitle him to relief.

In their reply brief, defendants rely on *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).   *Collins* was a suit by stock option holders who sued a defendant for losses associated with a merger concerning which the defendant had given a fairness opinion.  Addressing the defendant's Rule 12(b)(6) motion, the Fifth Circuit quoted its decision in *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994), for the proposition that, "[i]n order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Collins*, 224 F.3d at 498 (internal citations omitted).  The panel held that the plaintiffs had failed to meet this standard in attempting to plead a valid oral contract because they mentioned no specific agreement between the parties, and their allegations provided "no suggestion of a meeting of the minds." *Id.* at 500.  The present case is distinguishable from *Collins*, because Kougl has not asserted merely conclusory allegations but has also pleaded a specific contract under which both parties agreed to a working relationship.

Moreover, the fact that the terms of the oral agreement were contained in a non-binding employee manual does not abrogate the possibility that the parties entered into an oral contract. Although employment manuals and policy handbooks generally do not create contractual rights

under Texas law, binding oral contracts may be formed based on the provisions of such documents. *See Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex. App. 2003, no pet.) (citing *Gamble v. Gregg County*, 932 S.W.2d 253, 255 (Tex. App. 1996, no writ)).

Accordingly, defendants' motion to dismiss Kougl's breach of contract claim is granted to the extent he bases the claim on the Plan and is denied insofar as he bases it on an alleged oral agreement.

III

Defendants move to dismiss MCCS's claim for attorney's fees. They maintain that, despite MCCS's attempt to recover such fees under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1985), the contract between Xspedius Management and MCCS is the Agreement, and it is governed by Virginia law, which does not confer a right to attorney's fees. MCCS appears to concede that Virginia law governs the Agreement, but it asks the court to limit its ruling on attorney's fees to the Agreement and not to extend it to an oral agreement.

The Agreement clearly is governed by Virginia law, according to its own explicit language. In ruling on attorney's fees, the Supreme Court of Virginia has repeatedly upheld the strict use of the "American Rule," under which attorney's fees are not available unless specified by statute or express contractual provision. *See, e.g., Tontie v. Akbari*, 553 S.E.2d 769, 771 (Va. 2001); *Ryder v. Petrea*, 416 S.E.2d 686, 688 (Va. 1992); *Lannon v. Lee Conner Realty Corp.*, 385 S.E.2d 380, 383 (Va. 1989). Thus MCCS is not entitled to recover attorney's fees for a claim based on the Agreement.

The court need not address whether MCCS can recover attorney's fees for breach of an oral contract because MCCS has failed to allege such a claim. Paragraph 3.03 alleges that MCCS and

defendants entered into the Agreement, which "formalized the existing business agreement between MCCS and Defendants." Compl. ¶ 3.03. MCCS does not allege a claim based on any other contract. Merely adding the statement that the two parties "entered into a written or oral agreement," *see id.* ¶ 5.02, does not sufficiently state a claim based on an oral contract. When no additional facts are provided to justify such an inference, the allegation represents merely a conclusory allegation for the existence of an oral contract that is devoid of the factual support necessary to withstand dismissal under Rule 12(b)(6). *See Tuchman*, 14 F.3d at 1067.[4]

Accordingly, the court dismisses MCCS's claim for attorney's fees under the Agreement or based on an alleged oral contract.

## IV

Defendants also seek dismissal of plaintiffs' federal- and state-based declaratory judgment claims. Plaintiffs request a declaration that they had an enforceable agreement with defendants and that they are entitled to compensation as a result of defendants' breach of the agreements. They contend that these questions reflect an actual controversy and that a declaratory ruling would clarify the relevant legal issues. Defendants respond that declaratory judgment concerning plaintiffs' contractual rights is unnecessary, because a final judgment in this case will resolve these specific issues.

---

[4]Although Kougl and MCCS both assert breach of contract claims based on oral agreements and use similar language in doing so, *see* ¶¶ 4.02 (Kougl's claim) and 5.02 (MCCS's claim), the oral contract allegations contained in their respective claims are conclusory, *see id.* In ¶ 3.02 of the complaint, however, there is language concerning Kougl, but not MCCS, that suggests that he is relying on an oral contract that is based on the Plan. *See id.* ("The terms of Plaintiff Kougl's compensation are detailed in Defendant's contract entitled: 'General Terms and Conditions Compensation Plan' dated June 1, 2003[.]"). There is no similar language concerning MCCS. *See id.* ¶ 3.03. It is therefore proper to hold that Kougl has adequately pleaded a claim for breach of an oral contract but that MCCS has not.

Federal courts have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991).[5]  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). This section is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam).  It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.*  "Although 'the district court's discretion is broad, it is not unfettered.'" *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)).  The court cannot dismiss a declaratory judgment action "on the basis of whim or personal disinclination." *Id.* (quoting *Travelers*, 996 F.2d at 778).

The Fifth Circuit has established certain factors to guide a district court's decision whether to dismiss a declaratory judgment action.  These factors are: whether (1) there is a pending state action in which all of the matters in controversy may be fully litigated; (2) plaintiff filed suit in anticipation of a lawsuit filed by defendant; (3) plaintiff engaged in forum-shopping in bringing the action; (4) possible inequities exist in allowing plaintiff to maintain the action; (5) federal court is a convenient forum for parties and witnesses; (6) retaining the lawsuit in federal court would further judicial economy; and (7) the federal court must construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the parties is pending.

---

[5]"Although [plaintiff's] claim for declaratory judgment was first brought in state court, the removal to federal court causes the claim to be viewed as brought under the Declaratory Judgment Act." *I2 Techs. US, Inc. v. Lanell*, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002) (Fish, C.J.) (citing cases).  Following removal, plaintiffs have reasserted a state-based declaratory judgment claim, but this action is properly analyzed under federal law.

*St. Paul Ins.*, 39 F.3d at 590-91 (quoting *Travelers*, 996 F.2d at 778).

Having considered the factors, the court declines to consider plaintiffs' declaratory judgment actions. The core issues of this controversy concern whether the parties entered into enforceable contracts and, if so, whether defendants breached the contracts. These questions will be resolved in the context of breach of contract actions. Separate declaratory judgment actions would be redundant. *See Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, at *11 (N.D. Tex. 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of substantive claims that were already basis of lawsuit).

Accordingly, the court grants defendants' motion to the extent of dismissing their claims for declaratory relief.

V

Defendants seek dismissal of plaintiff's fraud-based claims—fraud, negligent misrepresentation, constructive fraud, and fraudulent inducement—under Rules 9(b) and 12(b)(6).

A

Rule 9(b) imposes heightened pleading requirements on claims of fraud. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b). Pleading fraud with particularity under 9(b) requires that a plaintiff "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997)). This rule should be applied "with force, without apology." *Williams*, 112 F.3d at

178.  Rule 9(b) is not intended, however, "to procure punctilious pleading detail."  *Steiner v. Southmark Corp.*, 734 F.Supp 269, 273, *recon. denied*, 739 F.Supp. 1087 (N.D. Tex. 1990) (Fitzwater, J.).  Thus it must be viewed in light of Rule 8(a)'s goal of "simple, concise, and direct" pleadings.  *Williams*, 112 F.3d at 178.

Rule 9(b) must also be interpreted and applied in alignment with its four purposes: "to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation."  *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 614 (S.D. Tex.2001) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)).

B

Defendants contend that plaintiffs have failed to meet the particularity requirements of Rule 9(b) by not specifying the time or place where the fraudulent statements were made, the content or identity of the speaker who made the statements, and the state of mind of the person.  Plaintiffs counter that pleading fraud with particularity differs according to the facts of each case.  They maintain that, when the facts they have alleged are viewed under the pleading principles of Rule 8, they provide ample notice to defendants.

The court holds that plaintiffs have failed in ¶¶ 4.15-4.24 and ¶¶ 5.10-5.19 to plead fraud with the specificity required by Rule 9(b).  For example, in ¶¶ 4.15-4.18 Kougl alleges a claim for common law fraud.  The only reference to time is the vague assertion that the events occurred sometime "before they (Xspedius) would employ him."  Compl. ¶ 4.16.  Plaintiffs do not identify

the places where the allegedly-fraudulent statements were made.  No person who made the statement

is identified; there is only an undifferentiated and global reference to "Defendants."  In fact,

plaintiffs do not even allege the content of some of the allegedly-fraudulent statements.[6]  None of

these assertions provides the specificity necessary to satisfy 9(b).[7]  The other fraud-based counts fare

no better.

Accordingly, the court dismisses plaintiffs' fraud-based claims and directs that, within 30

days from the date this memorandum opinion and order is filed, they file an amended complaint that

cures the deficiencies identified.

C

In addressing defendants' motion, the court must decide whether plaintiffs' negligent

misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b).  Plaintiffs

rely on an unpublished Fifth Circuit opinion to support their contention that the particularized

pleading standards for fraud do not extend to claims of negligent misrepresentation.  *See Am. Realty*

*Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed.Appx. 662 (5th Cir. 2004) (unpublished

opinion).  Previously, the Fifth Circuit had held that negligent misrepresentation claims could be

subject to the same pleading standards as fraud-based claims under Rule 9(b).  *See Benchmark Elecs.*

*v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003); *Williams,* 112 F.3d at 177.

In relying on *American Realty Trust*, plaintiffs fail to note the factual distinction made by

_____

[6]The court recognizes that plaintiffs purport in ¶¶ 4.15, 4.19, 4.22, 5.10, 5.14, and 5.17 of
their complaint to incorporate allegations made earlier in the complaint, but some of the incorporated
allegations are not conduct-specific.

[7]Plaintiffs have adequately pleaded scienter as to "Defendants."  *See* Compl. ¶¶ 4.16, 4.20,
4.23, 5.11, 5.15, and 5.18.  Once they comply with the requirement that they identify the speaker
who made a fraudulent statement, they must plead that person's state of mind.

the court in distinguishing the case from *Williams*. *See Am. Realty Trust*, 115 Fed. Appx. at 669 n.30. *American Realty Trust* involved a negligent misrepresentation claim pleaded separately from any fraud-based claims. The court noted that separating the two types of claims removed the case from analysis under *Williams*, since that case was decided based on pleadings in which negligent misrepresentation and fraud-based claims were not distinguished from one another. *Id*. Thus the Fifth Circuit does not reject the requirement that parties alleging negligent misrepresentation claims comply with Rule 9(b). Instead, it distinguishes between negligent misrepresentation claims made apart from, and those intertwined with, fraud-based claims.

If plaintiffs fail to distinguish their negligent misrepresentation claims from those based on fraud, the court will not separate the two when applying its Rule 9(b) analysis. *Williams,* 112 F.3d at 177. In *Benchmark* the court concluded that the plaintiff had failed to distinguish between his fraud and negligent misrepresentation claims, partly because both were "based on the same set of alleged facts." *Benchmark*, 343 F.3d at 723. Similarly, plaintiffs fail to distinguish their negligent misrepresentation claims from those based on fraud. Both types of claims arise from the same set of alleged facts. *See* Compl. ¶¶ 4.19-4.21 and 5.14-5.16. The court thus concludes that plaintiffs' negligent misrepresentation/constructive fraud[8] claims are subject to, and fail to satisfy, the same Rule 9(b) standards that govern their fraud-based claims.

A recent opinion of this court examines further whether a negligent misrepresentation claim is subject to the requirements of Rule 9(b). *See Am. Realty Trust, Inc. v. Travelers Cas. and Sur.*

---

[8]Although labeled "Constructive Fraud, MCCS's claim is one for negligent misrepresentation. *See* Compl. ¶ 5.15 ("Defendants negligently misrepresented the terms and conditions of compensation to Plaintiff MCCS under the [Agreement], thereby engaging in constructive fraud.").

*Co.*, 362 F.Supp.2d 744 (N.D. Tex. 2005) (Godbey, J.). *American Realty* emphasizes that *Williams* and *Benchmark* were both decided based on a theory of waiver, not merely because their negligent misrepresentation and fraud claims rested on the same set of facts. *Id*. at 750. The court proposes a two-prong test, under which Rule 9(b) applies to negligent misrepresentation claims only if: "(1) a plaintiff waives arguments to the contrary or (2) the inadequate fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." *Id*. at 752. Even under *American Realty*, however, plaintiffs' negligent misrepresentation claims must satisfy the pleading requirements of Rule 9(b). Plaintiffs have joined their negligent misrepresentation/constructive fraud claims so closely with their fraud-based claims that they cannot be clearly separated. When faced with such a commingling of claims, the court refuses to untangle plaintiffs' allegations, and "take[ ] upon itself a burden that is better placed upon the party responsible for the defective pleading." *Id*. Using either the standard Fifth Circuit analysis of *Benchmark* and *Williams* or the *American Realty Trust* test, plaintiffs' negligent misrepresentation claims are sufficiently intertwined to require compliance with Rule 9(b) and dismissal for failure to meet its requirements. Plaintiffs may attempt to correct this deficiency in the amended complaint that they are permitted to file.

\*   \*   \*

Accordingly, for the reasons set out, the court grants in part and denies in part defendants' December 28, 2004 partial motion to dismiss, and it grants plaintiffs 30 days from the date this memorandum opinion and order is filed to file an amended complaint.[9]

**SO ORDERED.**

June 1, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[9]Plaintiffs may attempt in the amended complaint to cure all defects that the court has identified in this memorandum opinion and order.  They are not limited simply to repleading their fraud-based claims to comply with Rule 9(b).